# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL A. CASTELLANO, | : | CIVIL ACTION NO. 3:17-CV-1035 |
| | : | |
| Plaintiff, | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| NANCY A. BERRYHILL[1] | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Plaintiff Michael A. Castellano ("Mr. Castellano") seeks judicial review of

the final decision of the Commissioner of Social Security ("Commissioner")

denying his application for Disability Insurance Benefits under Title II of the

Social Security Act.  Jurisdiction is conferred on this Court pursuant to 42 U.S.C.

§405(g).  This matter has been referred to the undersigned United States Magistrate

Judge to prepare a report and recommended disposition pursuant to the provisions

---

[1]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.  Due to the Federal Vacancies Reform Act, Former Commissioner of Social Security Nancy A. Berryhill is currently presiding as the Deputy Commissioner for Operations of the Social Security Administration, performing duties and functions not reserved to the Commissioner of Social Security. For consistency purposes, however, we will refer to Ms. Berryhill as the "Commissioner."

of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, we find that the Commissioner's final decision denying Mr. Castellano's claim should be **AFFIRMED**, and that Mr. Castellano's request for the award of benefits or a new administrative hearing should be **DENIED**.

## II.    Statement of Facts and of the Case

Mr. Castellano is an adult individual who resides within the Middle District of Pennsylvania. *Tr.* 137. Mr. Castellano was born on November 29, 1962, and at the time of his alleged onset date, he was fifty years old and considered as an individual of "closely approaching advanced age."[2] *Tr.* 119. He completed education through the ninth grade, and later went on to work a fifteen-year career as a mail carrier for the United States Postal Service. *Tr.* 139. Mr. Castellano's disability claim is related to a long history of back pain and various other physical ailments. In August of 2013, he sustained injuries to his upper and lower back

---

[2]    At the time of Mr. Castellano's alleged onset date of disability, he was considered an individual of "closely approaching advanced age," according to the regulations promulgated under the authority of the Act. *See* 20 C.F.R. § 404.1563(d). ("If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.")

after a motor vehicle accident, which ultimately caused him to stop working.  *Tr.* 170.

On January 30, 2014, Mr. Castellano protectively filed an application for disability insurance benefits under Title II of the Social Security Act.  *Tr.* 108-112. He alleged that he is disabled due to the following: pain and weakness, back injury, nerve pain in legs and right foot, right shoulder injury, neck injury, depression, carpal tunnel in both hands, cardiomyopathy, and asthma.  *Tr.* 138. On March 20, 2014, Mr. Castellano's claim was denied at the initial level of administrative review. *Tr.* 85-89.  Thereafter, he requested an administrative hearing.  *Tr.* 90-91. A hearing was convened on September 16, 2015 before an Administrative Law Judge ("ALJ") where Mr. Castellano appeared and testified with the assistance of his attorney. *Tr.* 47-70.  Impartial vocational expert Carmine Abraham also appeared and testified. *Id*.

On September 23, 2015, the ALJ denied Mr. Castellano's claim in a written decision.  *Tr.* 7-23.  Following the ALJ's adverse decision, Mr. Castellano requested further review of his claim by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council").  *Tr.* 24-26.  On April 20, 2017, the Appeals Council denied Mr. Castellano's request for review, making the

ALJ's September 2015 decision the final decision of the Commissioner subject to judicial review by this Court.   *Tr.* 1-6.

Mr. Castellano initiated this action by filing a complaint on June 13, 2017. *Doc.* 1.   In his complaint, Mr. Castellano seeks judicial review of the denial of benefits.   *Id.*   As relief, he requests that he receives relief that is proper.   *Id.* On August 14, 2017, the Commissioner filed her answer.   *Doc.* 8.   The Commissioner contends that the ALJ's decision is correct and in accordance with the applicable law and regulations, and that the ALJ's findings of fact are supported by substantial evidence.   *Id.*   Together with her answer, the Commissioner filed a certified transcript of the record of the administrative proceedings in this case. *Doc.* 9.   This matter has been fully briefed by the parties and is ripe for decision. *Doc.* 12; *Doc.* 13; *Doc.* 14.

## III.   <u>Legal Standards</u>

### A. <u>Substantial Evidence Review – the Role of This Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.   *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Mr. Castellano is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's

5

errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); *see also* 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled

prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §404.1520(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520(a)(4).

Between Steps Three and Four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

At Steps One through Four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §§404.1512[3]; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step Five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

---

[3]     The version of 20 C.F.R. §404.1512 effective on the date the ALJ issued her decision in this case was amended during the pendency of this action. Section (a) of this regulation was not substantively changed, and section (f) was redesignated as section (b)(3) in the new version of 20 C.F.R. §404.1512. We cite to the version of this regulation that was effective on the date of the ALJ's decision; however, the outcome in this case would be the same under the new version of this regulation.

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   Discussion

### A. The ALJ's Decision Denying Mr. Castellano's Claim.

In her September 2015 decision denying Mr. Castellano's claim, the ALJ found that Mr. Castellano met the insured status requirements of Title II of the Social Security Act through March 31, 2017. *Tr.* 12. The ALJ then assessed Mr. Castellano's claims at each step of the five-step sequential evaluation process before concluding that Mr. Castellano did not meet the statutory definition of disability under the Social Security Act.

At Step One, the ALJ found that Mr. Castellano did not engage in substantial gainful activity from his alleged onset date of August 18, 2013. *Id.* At Step Two, the ALJ found that Mr. Castellano had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, post lumbar fusion surgery in 2007, lumbar strain/sprain, degenerative disc disease of the cervical spine, cervical strain sprain, cervical radiculitis and carpal tunnel

syndrome, and post-surgical release. *Id.* The ALJ also found that Mr. Castellano had the following non-severe impairments: diverticulitis, bilateral renal cysts, atrial fibrillation, hypertension, sinusitis, internal hemorrhoids, headache, vitamin D deficiency, mixed hyperlipidemia, asthma, a history of cardiomyopathy, and a history of anxiety and depression. *Tr.* 12-13. At Step Three, the ALJ found that Mr. Castellano did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). *Tr.* 13.

Between Steps Three and Four, the ALJ evaluated Mr. Castellano's RFC. In doing so, he considered opinion evidence from treating physician Dr. Horchos, state agency physician consultant Dr. Bonita, state agency psychological consultant Dr. Vizza, and Debi Castellano, Mr. Castellano's wife. *Tr.* 16-18. The ALJ also considered evidence from a variety of other medical professionals that Mr. Castellano presented to date, as well as Mr. Castellano's testimony. *Tr.* 15-16. Based on the cumulative evidence, the ALJ found that Mr. Castellano had the RFC to perform light work with the following limitations:

> the claimant is limited to standing and walking for four hours throughout the workday with the option to transfer position from sitting to standing with each interval for each transfer being a maximum of one hour. The claimant would not be off-task when transferring. The claimant could perform occasional balancing, stooping, kneeling, crouching, crawling and climbing, but never on

10

> ladders, ropes, or scaffolds. The claimant could perform occasional pushing and pulling with the upper and lower extremities. The claimant could perform frequent fingering and feeling for fine manipulation, and frequent handling and grasping for gross manipulation. The claimant must avoid concentrated exposed to temperature extremes of cold and heat, wetness, humidity, vibrations and hazards, including moving machinery and unprotected heights.

*Tr*. 14.

At Step Four, the ALJ found that, based on the above-quoted RFC, Mr. Castellano was unable to perform his past relevant work as a mail carrier. *Tr*. 18. The ALJ proceeded to Step Five and found that, based on the above quoted RFC, and considering Mr. Castellano's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Mr. Castellano could perform. *Tr*. 19. Based upon the vocational expert's testimony, the ALJ determined Mr. Castellano is able to perform the following occupations: hand packager,[4] inspector,[5] and finisher.[6] *Id*. The ALJ determined that pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information published in the DOT, with the exception of the testimony provided regarding the sit/stand option and pushing/pulling limitations. *Tr*. 20.

---

[4]   DOT # 920.685-086.

[5]   DOT # 789.687-086.

[6]   DOT # 781.687-070.

The vocational expert testified that the information provided in her consideration of the sit/stand option and the pushing and pulling limitations was based upon her experience in reviewing the type of positions. *Id*. Therefore, the ALJ found that because Mr. Castellano was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, he did not meet the statutory definition of "disabled" under the Social Security Act. *Id*.

## V.   **Analysis**

### I.   **Whether the ALJ Properly Assessed Dr. Horchos' Statements.**

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally are entitled to more weight. *See* 20 C.F.R. § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's

12

condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Apfel*, 225 F.3d at 317.  Thus, an ALJ may not unilaterally reject a treating source's opinion, and substitute the judge's own lay judgment for that medical opinion. Instead, the ALJ typically may only discount such an opinion when it conflicts with other objective tests or examination results. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. *Torres v. Barnhart*, 139 Fed.Appx. 411, 415 (3d Cir. 2005).

Mr. Castellano argues that the ALJ erred in evaluating the opinions of Dr. Horchos because the opinions establish far greater limitations than the ALJ incorporated into the RFC. *Doc*. 12 at 13.  Mr. Castellano alleges that when the ALJ discounted Dr. Horchos' opinions, she failed to acknowledge the required

13

factors as set forth in 20 C.F.R. § 404.1527. *Doc*. 12 at 15. The Commissioner takes the position that the ALJ did not err in her analysis of Dr. Horchos' two opinions, and that she provided legitimate reasons for her decision not to adopt his opinion that Mr. Castellano is disabled. *Doc*. 13 at 8.

Treating physician Dr. Horchos authored two medical statements. On April 7, 2014, Mr. Castellano reported to Dr. Horchos that he was still having significant lower back pain and significant issues with transfers and ambulation. *Tr*. 970. Dr. Horchos noted that injections, medications, and therapy do not particularly help Mr. Castellano, but that the medications do make him comfortable with low level activities but precluded more aggressive activities such as home chores, walking, or certainly doing his postal route. *Id*. Dr. Horchos concluded that Mr. Castellano is a good candidate for long term disability. *Id*. Two months later, in a letter dated June 9, 2014, Dr. Horchos noted that Mr. Castellano returned to work after a lumbar fusion surgery, but following a car accident, he no longer could perform his job as a postal worker. *Tr*. 1018. Dr. Horchos opined that Mr. Castellano would not be able to return to gainful employment due to the severity of his pain in his lower extremities, lower back, and neck. *Id*.

At the outset, we note that Dr. Horchos' medical statements do not comport with the regulations definition of medical opinions. The Commissioner's

14

regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §404.1527(a)(1). Dr. Horchos treated Mr. Castellano a number of times and long enough to have obtained a longitudinal picture of his impairments. 20 C.F.R. § 404.1527(c)(2).   However, Dr. Horchos' medical statement regarding Mr. Castellano being a candidate for disability and Dr. Horchos' medical statement regarding Mr. Castellano not being able to return to work are not medical opinions "on the issue(s) of the nature and severity of [Mr. Castellano's] impairment(s)." 20 C.F.R. § 404.1527(c)(2).   In order to constitute as competent medical opinion evidence, a medical statement that confirms the "[m]ere presence of a disease or impairment is not enough. A claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity." *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006).   Dr. Horchos never opined regarding Mr. Castellano's functional limitations or what activities he could or could not perform in a work setting.   However, while Dr. Horchos' statements do not rise to the regulations' definition of medical opinions,

15

because the ALJ ascribed limited weight to such statements, we will address whether substantial evidence supports that weight.[7]

The ALJ reviewed the treatment records of Dr. Horchos, finding that these treatment records confirmed the existence of Mr. Castellano's back issues; however, the ALJ found that the treatment history, the clinical findings on examinations, and the records as a whole undermined his claim of total disability. The ALJ assigned limited weight to both Dr. Horchos' April 7, 2014 statement and Dr. Horchos' June 9, 2014 letter. *Tr.* 16. The ALJ did not outright reject Dr. Horchos' statements. Instead, the ALJ carefully explained why she assigned limited weight to Dr. Horchos' statements.

Because the ALJ did not give Dr. Horchos' statements controlling weight, the regulations required the ALJ to consider a list of factors when deciding the weight afforded to Dr. Horchos' statements: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; (5) the treating physician's specialization; and (6) other factors which tend to support or contradict the medical opinion. *See* 20 C.F.R. § 404.1527(c). It is well established in the Third Circuit that the ALJ must "set forth

---

[7]    For consistency purposes, we will analyze the statements as if they were medical opinions.

the reasons for her decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05). Most significantly, the ALJ's decision must be paired with "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  However, the Court also recognizes that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, there must be "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see e.g. Rivera v. Comm'r of Soc. Sec.*, 164 Fed.Appx. 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

The regulations require the ALJ to "consider" each factor in assigning weight to medical statements. 20 C.F.R. §404.1527(c).  However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p; *see also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6thCir. 2011) ("Although the

17

regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons . . . for the weight . . . give[n] [to the] treating source's opinion" – not an exhaustive factor-by-factor analysis . . . Procedurally, the regulations require no more.") (internal citations omitted). If explanation allows meaningful judicial review, it suffices. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *Hur v. Comm'r Soc Sec.*, 94 Fed.Appx.130, 133 (3d Cir.2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record"). Here, we find that the ALJ's explanation sufficed for meaningful review.

The ALJ's assessment of Dr. Horchos' medical statements is supported by substantial evidence in the record. Here, the ALJ discussed many of the factors when discounting Dr. Horchos' medical statements.  The ALJ acknowledged Dr.

18

Horchos' role as Mr. Castellano's treating physician,[8] and reviewed treatment records from Dr. Horchos in depth. *Tr*. 16-17.   The ALJ considered the supportability of Dr. Horchos' medical statements, noting that Dr.  Horchos' examination findings contradicted his medical statements.  The ALJ explained that on the same date of Dr. Horchos' April 7, 2014 medical statement, Dr. Horchos indicated that Mr. Castellano had good bilateral strength in his upper and lower extremities, negative straight leg raising testing, normal and equal deep tendon reflexes bilaterally, and no calf tenderness. *Tr*. 16. The ALJ ultimately assigned the April 7, 2014 medical statement limited weight and explained that while the objective evidence may support Mr. Castellano being unable to perform his physically demanding, past relevant work as a postal carrier, the portion of Dr. Horchos' medical statement as to disability is not well supported by the clinical findings.  *Id*. Finally, the ALJ noted that the April 7, 2014 medical statement was inconsistent with Dr. Horchos releasing Mr. Castellano to work in September of 2013.  *Id*. The ALJ explained that Dr. Horchos' June 2014 statement of disability

---

[8]    The ALJ mistakenly referred to Dr. Horchos as Mr. Castellano's treating psychiatrist, not his treating physician. While we do acknowledge this is an error on the ALJ's part, this minor mistake bears no flaw to the ALJ's discussion of Dr. Horchos' medical statements.  The ALJ's discussion permits meaningful review and it logically follows that the ALJ considered this factor when she assessed both of Dr. Horchos' medical statements.

lacked support for the same reasons. The ALJ also expressed that the determination as to disability is specifically reserved to the Commissioner. *Id.*

The ALJ also cited to objective evidence that failed to support a finding of disability. The ALJ noted that treatment records from an appointment on February 6, 2014, indicated that Mr. Castellano did not make any complaints regarding cervical or upper extremity pain. *Tr.* 16. The ALJ explained that on physical examination, Mr. Castellano had good bilateral upper extremity strength, but weakness in the right lower extremity and a positive straight leg-raise test. *Id.* The ALJ discussed subsequent treatment records, noting that in 2015, Mr. Castellano received injections in his lower back muscles with a relief in symptoms. *Tr.* 17. The ALJ discussed subsequent objective clinical findings, such as negative straight leg-raise testing, functional strength in the lower extremities bilaterally, symmetric reflexes at the knees and ankles, and good upper extremity strength bilaterally. *Id.*

The ALJ also considered other factors, including Mr. Castellano's testimony and his daily activities. *Tr.* 18. The ALJ noted that Mr. Castellano's statements and activities do not support greater limitations than provided for in the RFC. *Id.* The ALJ pointed out that Mr. Castellano maintains a driver's license and still drives to his doctor appointments. *Id.* The ALJ noted that Mr. Castellano reported that he occasionally mows his lawn with a riding mower. *Id.* The ALJ discussed

20

portions of Mr. Castellano's testimony, including his testimony that he wakes up early each morning and tries to help out around the house. *Id.*

The ALJ cited to substantial evidence in the record which supported that Dr. Horchos' medical statements conflicted with other objective tests or examination results and were inconsistent with Dr. Horchos' actual treatment notes, all factors which justified giving this medical source's statements little weight in a disability analysis. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202–03 (3d Cir. 2008); *see also Torres v. Barnhart*, 139 Fed.Appx. 411, 415 (3d Cir. 2005). In assigning limited weight to Dr. Horchos' two medical statements, the ALJ cited the medical statements inconsistencies with the objective medical evidence and with Mr. Castellano's daily activities. Procedurally, the regulations require no more. Accordingly, we find this argument is without merit.

## II.    Whether the ALJ Properly Assessed Mr. Castellano's Credibility.

Mr. Castellano argues that unambiguous agency policy requires consideration of an exemplary work history, and the ALJ did not consider it when assessing his credibility. *Doc*. 12 at 21. Mr. Castellano explained that that the factor of his exemplary work history does not entitle him to enhanced credibility but that the ALJ was plainly required to discuss this factor and she did not. *Doc*. 12 at 22. Mr. Castellano cites to 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 96-

7p, and claims that they require that a claimant's exemplary work history be considered as part of a credibility assessment. *Doc*. 12 at 21.

The Commissioner's guidelines for the assessment of a claimant's testimony are clear and clearly established. The Commissioner's regulations define "symptoms" as the claimant's own description of his or her impairment. 20 C.F.R. §404.1528, SSR 96-4p, 1996 WL 374187. The ALJ is required to consider all symptoms alleged, and in cases where symptoms are not substantiated by objective medical evidence or where conflicts in the evidence exist, assess the extent to which the claimant's description of his or her symptoms can be deemed credible. 20 C.F.R. §404.1529(a). In many cases, this determination has a significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting limitations – that are credibly established when formulating his or her RFC assessment. *Rutherford v. Barnhart*, 399 F.3d 546,554 (3d Cir. 2005). The Commissioner's regulations provide a list of factors that the ALJ should consider when assessing the credibility of a claimant's allegations about his or her symptoms. These factors include the following: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects

22

of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §404.1529(c)(3).

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); *Dobrowolsky v. Califano*, 505 F.2d 403, 409 (3d Cir. 1979). A claimant's subjective complaints "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints...." *Orndorff v. Colvin*, 215 F.Supp.3d 391, 401 (M.D. Pa. Apr. 13, 2016) (quoting SSR 96-7p).  A finding that a claimant received only conservative treatment is an appropriate consideration in assessing credibility regarding disabling impairments. *Skapely v. Colvin*, 2015 WL 7351583, at *12 (M.D. Pa. Nov. 30, 2015) (citing *Garrett v. Comm'r of Soc. Sec.*, 274 Fed.Appx. 159, 164 (3d Cir. 2008)). An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference as an ALJ is charged with observing a witness's demeanor and credibility.  *Frazier*

23

*v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531(6th Cir. 1997)). An ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford*, 399 F.3d at 554. Furthermore, "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.

As noted above, Mr. Castellano's main issue with the ALJ's credibility determination is that the ALJ failed to discuss his exemplary work history. Overall, this Court must give great deference to the ALJ's credibility determinations. The ALJ's findings based on the credibility of Mr. Castellano should be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. In this case, during the hearing, Mr. Castellano's attorney inquired into his work history. *Tr.* 64. Mr. Castellano's attorney asked him if he had worked the entire length of time since his back issues began, to which Mr. Castellano said yes, and explained that his decision to stop working was difficult because he had always worked and never wanted to apply for disability. *Id.* Later in the hearing, the vocational expert

24

testified that Mr. Castellano had a consistent work history for the past fifteen years as a letter carrier. *Tr.* 66. In her decision, although the ALJ did not go into great detail regarding Mr. Castellano's work history, she did note that Mr. Castellano received a disability retirement pension from the United States Postal Service, and she indicated that Mr. Castellano did work after the alleged onset disability date, but that the work activity did not rise to the level of substantial gainful activity. *Tr.* 12. The ALJ also pointed out that in September of 2013, Mr. Castellano's treating physician released Mr. Castellano back to work as a postal carrier. *Tr.* 16.

A claimant with a long work history is not automatically entitled to have his complaints credited. *Birtig v. Colvin*, 2014 WL 5410645, at *10 (W.D.Pa. Oct. 23, 2014). When an ALJ finds that the claimant's alleged limitations are not supported by the medical evidence, an ALJ is not required to equate a long work history with enhanced credibility. 2014 WL 5410645, at *10 (citing *Polardino v. Colvin,* 2013 WL 4498981, at *5 (W.D.Pa. Aug. 19, 2013)). Here, the ALJ determined Mr. Castellano's alleged limitations were not supported by the record, and appropriately did not equate his long work history with enhanced credibility.

While Mr. Castellano argues that the ALJ erred in her credibility analysis because she failed to mention his extensive work record, it is well-established that the ALJ need not address every piece of evidence in the record. *Hur v. Barnhart*,

25

94 F. App'x 130, 133 (3d Cir.2004); *see Johnson v. Comm'r of Soc. Sec*., 529 F.3d 198, 204 (3d Cir.2004) (An ALJ may not reject pertinent evidence without explanation, but does not need to cite all evidence the claimant presents). The ALJ referenced a multitude of evidence included in the record to support her conclusion, including Mr. Castellano's medical records, other medical documents, past work history, and activities of daily living. *Tr.* 14-18. Furthermore, the ALJ did not wholly reject Mr. Castellano's allegations entirely. Rather, she incorporated numerous limitations related to Mr. Castellano's subjective complaints in the RFC assessment. For example, the ALJ accounted for Mr. Castellano's need to alternate positions by limiting him to standing and walking for four hours throughout the work day, with the option to transfer positions from sitting to standing and a maximum of one hour transfer for each transfer interval. Additionally, the ALJ accounted for Mr. Castellano's postural difficulties by limiting him to jobs that required no more than occasional balancing, stooping, kneeling, crouching, and crawling and never on ladders, ropes, or scaffolds.

Therefore, while Mr. Castellano's work history was one factor out of many in determining his credibility, the ALJ was under no duty to discuss this work history in her decision. The ALJ appropriately considered Mr. Castellano's past work history when rendering her decision. Moreover, no circumstance exists in the

record to prompt the Court not to give the mandated deference to the ALJ's credibility determination. The ALJ considered the record as a whole, and cited ample support for her decision to partially discount Mr. Castellano's allegations of total disability. Accordingly, we find that Mr. Castellano's work history alone is insufficient to overcome the substantial evidence supporting the ALJ's credibility determination.

### III.    Whether the ALJ's Step Five Finding is Sufficient.

The medical-vocational guidelines, or "grids," are rules prepared by the Commissioner which evaluate a claimant's ability to work by matching the claimant's age, education and work experience with his or her work capability. 20 C.F.R. Part 404, Subpart P, Appendix II. The grids are divided into five residual function categories based on the definitions set forth in 20 C.F.R. § 404.1567. *Id.* Each residual function category is subdivided by age, education, and work experience. *Id.* The Commissioner can determine whether a claimant is disabled under the grids by matching the claimant's age, education, and work experience with his RFC. *Id.*  The grids may not be applied conclusively where the claimant does not fall squarely within all of the criteria of a specific rule, i.e., because his or her exertional limitations prevent the performance of the full range of work within a regulatory RFC category or because a claimant does not fit sparely within a

27

particular vocational classification. *See* 20 C.F.R. Part 404, Subpart P, Appendix II § 200(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply ...".); SSR 83–12 ("The table rules do not direct such conclusions where an individual's exertional RFC does not coincide with the exertional criteria of any one of the exertional ranges…".).

Where a claimant's exertional capacity falls between two rules, or "where [a claimant] has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations," the grids can be used only as a framework for the ALJ's analysis. 20 C.F.R. Part 404, Subpart P, Appendix II § 200(e); *see also* SSR 83–12; SSR 83–14. In such cases, the grids are first considered in determining whether a finding of "disabled" may be possible based on strength limitations alone under the applicable grid rule. *See* SSR 83–12; SSR 83–14. However, if the grid rule applicable to the claimant directs a finding of "not disabled," the ALJ should consult a vocational resource, such as a vocational expert, to ascertain whether a significant number of jobs remain in the national or regional economy despite any erosion to the occupational base of the grid rule due to the additional exertional or nonexertional limitation. *Id.*

28

In this case, throughout the decision, the ALJ carefully articulated why the record supported the determination that Mr. Castellano could perform the RFC range of light work. *Tr*. 12-19. After determining that Mr. Castellano's medical records supported a light RFC rather than a sedentary RFC, the ALJ appropriately explained that if Mr. Castellano could perform a full range of light work, she would have applied the grid rules as a framework for decision-making. *Tr*. 19. However, because Mr. Castellano has additional limitations, the ALJ explained that she consulted a vocational expert to assess the erosion of the unskilled light occupational base. *Id*. The ALJ explained that the vocational expert testified that there were jobs that Mr. Castellano could perform, given his RFC and additional limitations. *Id*. In addition, the ALJ noted that the vocational expert testified that the job numbers included a consideration for changing position throughout the workday, which reduced them by fifty percent of the original number. *Tr*. 20. The ALJ also explained that the vocational expert's testimony was consistent with the information found in the Dictionary of Occupational Titles with the exception of the sit/stand option and the pushing/pulling limitation. *Id*. The ALJ noted that the vocational expert testified that the identified jobs could be performed either sitting or standing and with the pushing and pulling limitations provided for in the RFC based upon her experience in reviewing the types of positions. *Id*.

The hearing testimony further expounds that the ALJ complied with SSR-83-12.  As previously discussed, the ALJ did utilize the services of a vocational expert. *Tr.* 65-69. The vocational expert provided specific testimony about whether the identified jobs could be performed at the light level. *Tr.* 67-68.  The vocational expert testified that if Mr. Castellano was limited to only two hours of standing and walking throughout the workday, that would render the RFC more akin to sedentary based positions, and because Mr. Castellano has no transferrable skills to sedentary, no jobs would be available for him.  *Tr.* 68.  However, Mr. Castellano is limited to four hours of standing and walking throughout a work day; thus, in line with light work. The hypothetical question to the vocational expert fairly set forth all of Mr. Castellano's limitations and the ALJ was fully entitled to rely upon the vocational expert's testimony in determining that Mr. Castellano was able to perform other jobs in accordance with his RFC. Accordingly, substantial evidence supports the ALJ's step five discussion.

## IV.    Recommendation

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Mr. Castellano's request for a new administrative hearing be **DENIED** and the Commissioner's final decision denying Mr. Castellano's claim be **AFFIRMED** as follows:

1. The Court issue final judgment in favor of the Commissioner and against Mr. Castellano as set forth in the following paragraph;

2. The Commissioner's final decision denying Mr. Castellano's application for Social Security Benefits under Title II of the Social Security Act should be **AFFIRMED** because it is supported by substantial evidence; and,

3. The Clerk of Court should close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

31

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted August 24, 2018

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge

32